UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **United States of America** | : |
| | : |
| v. | : No. 18-cr-325 |
| | : |
| **Edward Lugo** | : |
| | : November 18, 2021 |
| | : |

**MEMORANDUM OF DECISION ON SUPERVISED RELEASE VIOLATION**

Defendant, Edward Lugo, is currently on supervised release following a 2019 conviction. Mr. Lugo appears before the Court now on a supervised release violation charge, alleging that Mr. Lugo violated the conditions of his supervised release by committing another criminal offense while on supervision. Mr. Lugo has denied the charges. The Court conducted multiple hearings and has reviewed the physical evidence presented.

As detailed below, the Court finds that Mr. Lugo did violate his conditions of supervised release and sentences him to twenty-four months incarceration with no period of supervised release to follow.

I.   BACKGROUND

In June 2019, Mr. Lugo was sentenced for unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1), which is an offense that carries a statutory maximum term of imprisonment of 10 years; 18 U.S.C. § 924(a)(2); and a maximum period of supervised release of three years; 18 U.S.C. § 3583(b)(2). The Guidelines range for Mr. Lugo's conduct was deemed to be 27 to 33 months incarceration. [Statement of Reasons, Dkt. 48]. The Court

sentenced Mr. Lugo to a lenient sentence of twenty-one months incarceration to be followed by three years of supervised release.  [Judgment, Dkt. 47].  Mr. Lugo was subject to the mandatory and standard conditions of supervised release, including a condition prohibiting him from committing another federal, state or local crime.  [*Id.* at 3].

Mr. Lugo commenced his supervised release on March 16, 2020.  [Final Violation Report, Dkt. 60].  Five and one-half months later on September 1, 2020, the United States Office of Probation issued a petition for warrant or summons for Mr. Lugo, alleging that Mr. Lugo violated the condition of his supervised release that prohibits him from committing another federal, state, or local crime.  [Dkt. 54].  As alleged in the original report, Mr. Lugo was arrested on August 31, 2020 by New Haven Police and charged with driving while under the influence.  [*Id.*].  At the time, Probation reported that Mr. Lugo struck and killed a pedestrian in a collision that led to this arrest.  [*Id.*].  The Court issued a warrant for Mr. Lugo's arrest on September 8, 2020 on Probation's petition.  [*Id.*].

Mr. Lugo was arrested on the Court's warrant on September 18, 2020 and appeared before Judge Spector on September 21, 2020 for arraignment.  [Dkt. 55].  The Government moved for detention, which Judge Spector granted that same day.  [Dkts. 52 and 53].  On October 6, 2020, Mr. Lugo appeared on the violation report.  [Dkt. 65].  At this hearing, the Government presented video surveillance evidence from the events leading to Mr. Lugo's arrest, which the Court will detail below.  The Court continued the revocation hearing until the pending state charges were resolved.  [*Id.*].

While on detention on May 24, 2021, Mr. Lugo filed a motion for release from custody so he may attend his mother's funeral. [Dkt. 67]. The Court granted the motion the next day. [Dkt. 68]. However, later that day, Mr. Lugo withdrew his request indicating that defense counsel was informed that, if Mr. Lugo was release from custody, he would be immediately detained and extradited to New Haven on an open arrest warrant before he could attend his mother's funeral. [Dkt. 69].

Thereafter, on June 7, 2021, the Court conducted a teleconference with the parties and scheduled a violation hearing for September 22, 2021. [Dkts. 73 and 74]. Due to a change in the Court's calendar, the hearing was continued to October 6, 2021, which was then continued again on Defendant's motion to October 12, 2021. [Dkts. 77, 79, and 80].

At the October 12, 2021 hearing, New Haven Police Department Officers Megan Moran and Ryan Hall testified. [Tr., Dkt. 93]. Officer Moran testified that she was on patrol on August 31, 2020 when she received a called to El Grasso Boulevard where she observed a black BMW crashed into a telephone pole. [*Id.* at 6]. She met with another officer, Officer Noble, who was already on the scene, who informed Officer Moran that Mr. Lugo was the driver of the black BMW and that he was observed going into the vehicle multiple times by that officer. [*Id.* at 8–9].

Officer Moran testified that she spoke with Mr. Lugo and observed he was using a near-by fence to brace himself, his eyes were glazed, his pupils were pinpoint, and he was having difficulty responding to basic questions. [*Id.* at 7, 9]. She further testified that having pinpoint pupils is a sign of opioid use. [*Id.* at 10]. Officer Moran then conducted a field sobriety test, which comprised of three

portions. [*Id.* at 11]. Mr. Lugo passed the first test, the Horizonal Glaze Nystagmus test, but failed the other two, the Walk-And-Turn and the One-Leg Stand tests. [*Id.* at 12–16].

Mr. Lugo was then arrested, taken to the New Haven Police Department, and was given a breathalyzer test. [*Id.* at 17–20]. His breathalyzer test results showed a zero-blood alcohol content. [*Id.* at 20]. Officer Moran then ordered a urine test, which was shipped to a toxicology lab for further testing. [*Id.* at 20]. The name on the urine sample vile lists the Defendant's name as "Edwin Lugo," which officer Moran says was the name the Defendant gave at the time. [*Id.* at 21]. It later became known that his legal name was Edward Lugo. The urine test results were positive for cocaine and fentanyl. [*Id.* at 24].

Officer Hall testified that he responded to the scene of the accident to collect roadway evidence. [*Id.* at 52–53]. The following day, he met with the staff at a nearby beauty supply store to review their surveillance cameras. [*Id.* at 53–55]. This video evidence was admitted into evidence on October 6, 2020.

In the video, it is impossible to see whether the streetlight from the direction of Mr. Lugo's vehicle was red, yellow, or green, because the camera is facing towards the opposite direction from where the vehicle was coming. The video depicts a vehicle going through the intersection, impacting an individual walking on the street, then swerving into what appears to be a large street pole along the road. The impact on the pole was significant enough to cause the pole to bend and crack at the impact sight. At the time of impact, the front airbags of the vehicle deployed.

Within seconds, multiple surrounding vehicles stopped around the vehicle involved in the crash and people from those vehicles appear to be attempting to render aid. In the vehicle involved in the crash, the passenger side door opened, and someone exited. The camera angle is of the broad passenger side of the vehicle, meaning there is no view of the driver's side of the vehicle. The passenger is then embraced by two people. One of those people thereafter goes behind a small retaining wall along the road and crouches down for a brief moment, then turns towards a parked vehicle near the wall. This person then lays flat on his stomach next to the parked vehicle and extends his arm under the vehicle for a brief moment. Thereafter, this person rises and begins speaking with two other people by the retaining wall. About a minute and a half later, the same person goes back to the parked vehicle bends down behind the trunk of the vehicle and them immediately walks away. Police respond about a minute or two later.

Officer Hall testified that the person seen going under the near-by vehicle multiple times was Mr. Lugo. [Tr. at 55, 66]. He explained that he confirmed this was Mr. Lugo because the video shows that person engaging with another officer, Officer Noble, who confirmed that the person he engaged with was Mr. Lugo. [*Id.* at 66]. After viewing the surveillance video, Officer Hall immediately went to the parking lot where the vehicle in the video was and saw that the vehicle was still there. [*Id.* at 56]. Under that vehicles rear driver's side tire, he found a clear bag and seized it. [*Id.*]. In the bag was seventeen small baggies and two medium size baggies, which tested positive for cocaine. [*Id.* at 57–60, Ex. 2]. The cocaine collected weighed was approximately 7 grams. [*Id.* at 61]. Officer Hall testified that

based on his training and experience, this sum of cocaine was more than a quantity a simple drug user would possess, suggesting that the person possessing this was a drug distributor.  [*Id.* at 62–63].

During closing remarks, defense counsel presented two key arguments relating to mitigating factors the Court should consider if the Court finds Mr. Lugo violated his conditions of supervised release.  First, defense counsel argues the Court should consider the effect Mr. Lugo's mother's passing away while he was detained has had.  [Tr. at 86–87].  The Court was informed that Mr. Lugo's mother passed away on May 25, 2021, when Mr. Lugo moved for temporary release to attend her funeral.  [Dkt. 67].  Mr. Lugo's mother was diagnosed with cancer prior to the night of his fatal collision and arrest.  [Tr. at 96].

Second, defense counsel argues that Mr. Lugo's detention has been exceptionally harsh and adequate to deter future violations because Mr. Lugo contracted COVID-19 while incarcerated.  [Tr. at 86].  Counsel provided medical records, that show Mr. Lugo appears to have contracted COVID-19 shortly after he was ordered detained.  The day after Mr. Lugo was ordered detained, on September 22, 2021, Mr. Lugo was tested for COVID-19 and rendered a negative result.  [Med. Records at 55].  He was tested again a week later and rendered another negative result.  [*Id.* at 54].  On October 11, 2020, Mr. Lugo had a fever of 102 and reported having a headache.  [Med. Records at 47].  The next day, he no longer had a fever and no longer reported having any other COVID symptoms.  [*Id.* at 45].  On October 13, 2020 and again on October 25, 2020, Mr. Lugo rendered positive COVID tests.  [*Id.* at 51–53].  On October 23 through 25, 2020, a treatment sheet shows he had no

COVID symptoms. [Med. Records at 15]. In short, Mr. Lugo contracted COVID approximately two weeks or so after he was detained and he experienced a moderate reaction, in that he had moderate symptoms for a day. At argument, defense counsel suggested that Mr. Lugo caught COVID again in April 2021 that was asymptomatic, but there is no documentary evidence to support this claim. [Tr. at 93].

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3583(e),

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)-- . . . (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation . . . more than 2 years in prison if such offense is a class C or D felony . . . .

Section 3583(h) provides that:

> When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment, the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

"To revoke supervised release and impose a term of imprisonment, a district court must find by a preponderance of the evidence that the defendant violated a condition of his supervision." *United States v. Edwards*, 834 F.3d 180, 199 (2d Cir.

2016) (citing to 18 U.S.C. § 3583(e)(3)). "The preponderance standard requires proof that the defendant's violation of supervision was 'more likely than not.'" *Id.*

### III. DISCUSSION

#### A. Violation

At the outset, the Court must decide whether Mr. Lugo violated a condition of his supervision. Specifically, the Court must decide if Mr. Lugo committed another criminal offense while on supervision. The Court finds that he did. On August 31, 2020, Mr. Lugo drove while intoxicated resulting in the death of a pedestrian. Officer Moran testified that she observed Mr. Lugo exhibit signs of intoxication, including having pinpoint pupils consistent with opioid use. Officer Moran also testified that Mr. Lugo was having difficulty walking, relying on a fence to brace himself. She also testified that he had difficulty responding to questions. Mr. Lugo failed two of the three field sobriety tests. The evidence also shows that Mr. Lugo rendered a urine screen positive for cocaine and fentanyl. No evidence was presented undermining the accuracy of this drug screen and the Court has no reason to suspect it is inaccurate. The Court finds by a preponderance of the evidence Mr. Lugo committed another crime when he drove while intoxicated, which resulted in the death of a pedestrian.

The Court also finds that Mr. Lugo did illegally possess the approximately 7 grams of cocaine found by law enforcement under the parked vehicle. Mr. Lugo was the individual in the video who hunched down and placed something underneath the parked vehicle on two occasions shortly after the car accident. Though the video is certainly not the picture of clarity, circumstantial evidence

supports this conclusion. This includes the evidence showing that the person who placed the drugs under the vehicle was one of the two people who embraced the passenger immediately after the crash. Also, Officer Hall identified the person who placed the drugs under the parked vehicle as Mr. Lugo. In addition, as stated above, Mr. Lugo rendered a positive urine screen for cocaine, which is the same drug found under the parked vehicle. Even though there was several hours between when the accident occurred and when the drugs were discovered, the totality of the evidence shows that it is more likely than not that the drugs were placed there by Mr. Lugo as depicted by his furtive and otherwise inexplicable acts in the video. The Court finds that by a preponderance of the evidence, Mr. Lugo committed another criminal offense by illegally possessing approximately 7 grams of cocaine.

Therefore, the Court finds that Mr. Lugo violated a condition of his supervised release by committing two criminal offenses while on supervision, in one of which death resulted.

B. Sentence

Now that the Court has determined that Mr. Lugo did violate the conditions of his supervised release, the Court must determine what an appropriate sentence for this violation should be. In making this determination, the Court considers the following factors:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-- . . .
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(4) the kinds of sentence and the sentencing range established for—
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
      (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
      (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
    (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
(5) any pertinent policy statement—
    (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
    (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

§ 3553(a).

Here, the Court finds, and the parties agreed during the violation hearing, that the Guidelines recommend a sentence of 18 to 24 months. [Tr. at 85].

The Court finds Mr. Lugo's offense was particularly serious given his recent release from incarceration, the leniency shown by the court to Mr. Lugo at sentencing, and his disrespect of the Court's orders and the law. The Court also finds Mr. Lugo is not susceptible to supervision at this time and will likely be sentenced to a term of probation by the Superior Court and thus a period of supervised release is unwarranted. A significant sentence is essential to dissuade Mr. Lugo from committing further offenses, protect the public and to promote his respect for the law. His mild case of COVID-19 and his mother's demise are not a basis for a departure. He was asymptomatic and had no rational fear of death from the virus. While his mother's death is lamentable, he chose to conduct himself in a way that brought her more grief and stress rather than to bring her solace by spending her final days at her side. After considering all the necessary factors and the facts presented by the parties, the Court revokes Mr. Lugo's term of supervised release.

IV.    CONCLUSION

The Court finds the sentence which is sufficient and not greater than necessary to serve the purposes of sentencing is, and hereby sentences Mr. Lugo to twenty-four months in the custody of the Bureau of Prisons to be followed by no period of supervised release.

IT IS SO ORDERED.

                                                                   /s/
                                            Hon. Vanessa L. Bryant
                                            United States District Judge

Dated this day in Hartford, Connecticut: November 18, 2021